IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASCELLAHEALTH, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL BALDZICKI,<br><br>        Defendant. | Civil Action No.   23-3402 |

## VERIFIED COMPLAINT

Plaintiff AscellaHealth, LLC ("AscellaHealth") brings this action against Defendant Michael Baldzicki, its former Executive Vice President of Growth & Strategy. Mr. Baldzicki, faced with the termination of his employment, emailed some of AscellaHealth's confidential and proprietary information from his AscellaHealth email to his personal email account. This behavior was, as AscellaHealth would subsequently learn, consistent with his actions throughout his employment. AscellaHealth has discovered that Mr. Baldzicki sent himself vast amounts of AscellaHealth confidential and proprietary information. Since his departure from AscellaHealth, and despite repeated demands, Mr. Baldzicki has retained and refused to return AscellaHealth's trade secrets and confidential and proprietary information. Due to the highly proprietary and sensitive information at issue, AscellaHealth now seeks a temporary restraining order and preliminary injunction, as well as other relief, to remedy Mr. Baldzicki's actual and threatened misappropriation of AscellaHealth's trade secrets and confidential information and his breach of his AscellaHealth employment agreement.

## THE PARTIES

1.     AscellaHealth is a limited liability company headquartered at 1055 Westlakes

Drive #175, Berwyn, Pennsylvania, 19312. AscellaHealth is a global specialty pharmacy and healthcare services organization.

2. Mr. Baldzicki is a citizen of the State of Ohio, residing at 7317 Marist Lane, Dublin, Ohio, 43017. Mr. Baldzicki worked for AscellaHealth for more than four years, during which he had access to and acquired AscellaHealth's trade secrets and confidential information concerning, among other things, customer and prospect information, sales information, pricing and profitability information, business plans, and strategies for expansion.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over AscellaHealth's claims under the Defend Trade Secrets Act under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

4. As an additional basis for jurisdiction, this Court has subject matter jurisdiction over this Action under 28 U.S.C. § 1332(a)(1) because it is between citizens of different states (AscellaHealth is a citizen of Pennsylvania and Virginia because its members are individuals who are citizens of those states, and Mr. Baldzicki is a citizen of Ohio), and the amount in controversy exceeds $75,000, exclusive of fees and costs.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here, and a substantial part of property that is the subject of this Action is situated in this District. In addition, Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Mr. Baldzicki consented to the jurisdiction of this Court in his employment agreement.

## FACTS

### Background on AscellaHealth

6. AscellaHealth offers a comprehensive portfolio of uniquely tailored technology-enabled services to support complex, chronic conditions or rare diseases that require specialty medications or cell and gene therapies. AscellaHealth's customized clinical and technology-based services streamline access to specialty and rare disease medications.

7. AscellaHealth serves patients, life sciences manufacturers, payers, and providers. Using its patient-centric approach built on proprietary technology processes, AscellaHealth addresses multiple challenges for healthcare stakeholders, optimizes clinical outcomes, and improves qualify of life for patients.

8. Because of the competitive industry in which it operates, AscellaHealth has developed and closely guards its confidential and proprietary information.

9. AscellaHealth has achieved, and will continue to maintain, its present competitive advantage by preserving the confidential and proprietary nature of its trade secret and confidential business information including, but not limited to, proprietary processes, current and future business plans, strategies for new services and expansion, customer and sales information and strategies, and pricing and profitability information.

10. AscellaHealth has taken and continues to take great care to maintain the confidential and trade secret nature of such information.

11. AscellaHealth requires its employees to sign confidentiality agreements. In addition, AscellaHealth limits access to its confidential information to those with a business need to utilize it.

12. Among other things, AscellaHealth limits access to its offices to employees.

AscellaHealth maintains policies in its Employee Handbook and Code of Conduct regarding the protection of confidential information, and employees complete annual Information Technology security training.

13. AscellaHealth maintains an IT infrastructure that is hardened—meaning, security is applied to each component of the infrastructure, including web servers, application servers, identity, and access management solutions—and only allows authorized users onto the network. AscellaHealth also has SOC 2 certification,[1] conducts yearly IT Penetration Testing, and requires password protection for all AscellaHealth devices and systems.

14. If its trade secret and confidential business information were to become available to a competitor or become public knowledge, AscellaHealth's competitive advantage and the substantial investments made by AscellaHealth in developing and maintaining its trade secrets and confidential information would be irreparably injured and/or destroyed.

**Mr. Baldzicki's Employment with AscellaHealth**

15. Mr. Baldzicki began his employment with AscellaHealth on April 22, 2019, as Executive Vice President of Growth & Strategy.

16. In his role, Mr. Baldzicki reported directly to AscellaHealth's Chief Executive Officer. He was responsible for, among other things, assisting and supporting new business attainment, marketing AscellaHealth's services, managing existing clients, and managing a team to support his duties.

17. Mr. Baldzicki eventually became Chief Branding Officer for AscellaHealth. In his role as Chief Branding Officer, Mr. Baldzicki had a key role in collaborating with the Marketing, Business Development, and Sales teams to roll out a comprehensive brand strategy to increase

---

[1] SOC 2 (System and Organization Controls 2) is a type of audit report that attests to the trustworthiness of services provided by a service organization.

brand awareness, boost perceived value and build brand loyalty in the marketplace.

18. Mr. Baldzicki was the brand champion of the organization ensuring the brand is infused into all parts of the company from sales and marketing to finance and customer service and everything in between. He worked to align initiatives and strategies throughout the organization with the overall brand to create a promise and experience to meet the expectations for the AscellaHealth brand in the minds of current and potential customers.

19. Mr. Baldzicki had access to vast amounts of AscellaHealth's trade secret and confidential business information including, but not limited to, proprietary processes, current and future business plans, strategies for new services and expansion, customer and sales information and strategies, and pricing and profitability information.

20. When he began his employment with AscellaHealth, Mr. Baldzicki signed an Employment Agreement. (A copy of the Employment Agreement is attached hereto as Exhibit A.) The Employment Agreement contains a section called "Confidentiality," which provides:

> a. The Employee agrees that the information relating to the Company's practices, customers, vendors, competitors, marketing, finances, trade secrets, know-how, inventions, discoveries, techniques, processes, computer programs, and any and all other information relevant to the operation of the Company's business are and shall remain the exclusive property of the Company at all times, are confidential and are of great value to the Company, and that any such information developed by the Employee during the course of such employment is and shall remain the property of the Company. The Employee agrees not to disclose any such information except as required for the performance of employment, and must not use such information for any other purpose at any time during or after termination of employment.
>
> b. Further, the Employee recognizes and acknowledges that the business matters and affairs of the Company shall be kept confidential, and the methods of business operations of the Company are valuable and confidential and that unauthorized disclosure of the same would irreparably damage the Company.
>
> c. The Employee therefore acknowledges that the Company's remedy in the form of monetary damages for any breach by the Employee of any

of the provisions of this Section 11 may be inadequate and that, in addition to any remedy for such breach, the Company shall be entitled to institute and maintain any appropriate proceeding or proceedings including an action for specific performance and/or injunction.

(Exhibit A, §11.)

### Mr. Baldzicki's Taking of AscellaHealth's Information

21. On July 18, 2023, Mr. Baldzicki was at AscellaHealth's offices in Berwyn, Pennsylvania for a meeting with Chief Financial Officer Bill Oldham, Chief Operating Officer John Campolongo, and Senior Human Resources Consultant Mark Izzo..

22. During the meeting, Mr. Oldham informed Mr. Baldzicki that his employment would be terminated. Mr. Baldzicki admitted that he anticipated that his employment would be terminated during the meeting.

23. Following the meeting, AscellaHealth learned that Mr. Baldzicki had sent at least three emails from his AscellaHealth email account to his personal email account (mbaldzicki@gmail.com). These emails contained AscellaHealth confidential and proprietary information.

24. Specifically, at 9:05 a.m. on July 18, 2023, Mr. Baldzicki sent an email containing proprietary and confidential AscellaHealth Copay Advisor Program training materials.

25. At 9:07 a.m. on July 18, 2023, Mr. Baldzicki sent an email containing proprietary and confidential presentations on AscellaHealth's European strategy for new services.

26. At 10:01 a.m. on July 18, 2023, Mr. Baldzicki sent an email containing a claim file from an AscellaHealth prospect. This file contained Protected Health Information.

27. Following the discovery of Mr. Baldzicki's actions on July 18, 2023, AscellaHealth discovered additional instances of Mr. Baldzicki forwarding its trade secret and confidential and proprietary information to his personal email account.

28. On May 19, 2023, at 3:45 p.m., Mr. Baldzicki forwarded AscellaHealth's April SP fulfillment reports to his Gmail account.

29. On June 17, 2023, at 7:08 a.m., Mr. Baldzicki forwarded AscellaHealth's May SP fulfillment reports to his Gmail account.

30. On July 12, 2023, at 8:34 p.m., Mr. Baldzicki forwarded AscellaHealth's June SP fulfillment reports to his Gmail account.

31. The SP fulfillment reports have information regarding AscellaHealth's costs for ingredients, copay dollars, discount rates, and fees. These reports contain among the most important – if not, *the* most important – information for AscellaHealth as a company.

32. On June 13, 2023, at 6:22 a.m., Mr. Baldzicki sent to his personal email account a PowerPoint presentation containing a site of care strategy that AscellaHealth was preparing.

33. On May 17, 2023, ad 2:20 p.m., Mr. Baldzicki sent to his personal email slides from a confidential presentation on AscellaHealth's financial performance.

34. On May 23, 2023, at 11:55 a.m., Mr. Baldzicki sent to his personal email account a PowerPoint presentation from AscellaHealth's Senior Leadership Semi-Annual Meeting. In addition to information on AscellaHealth's strategy for 2023 and business development, this presentation included financial information on AscellaHealth's performance.

35. In addition to sending confidential and proprietary information to his own email account, on May 26, 2023, Mr. Baldzicki sent AscellaHealth business development pipeline spreadsheets to the email address lancebaldzicki@gmail.com. Upon information and belief, this email address belongs to Mr. Baldzicki's son.

36. AscellaHealth has learned that, over the course of his employment, Mr. Baldzicki sent no fewer than 3,700 emails from his AscellaHealth email account to his personal email

account, many (if not all) of which contain trade secret and confidential information and proprietary information.

37. Despite receiving notification that AscellaHealth has discovered his misappropriation of its information, Mr. Baldzicki has refused to allow a forensic examination of his computer and electronic data storage devices and cloud accounts to remove AscellaHealth's information.

38. Further, after learning of AscellaHealth's concerns, Mr. Baldzicki now claims that his personal laptop computer was stolen while he was traveling on August 21, 2023.

39. The retention of AscellaHealth's trade secret and confidential and proprietary information in the hands of its former Executive Vice President will cause irreparable injury to AscellaHealth. This information, in the hands of a competitor, would cause extensive economic and business injury to AscellaHealth.

40. The harm to AscellaHealth caused by Mr. Baldzicki's conduct includes, but is not limited to, the misappropriation, misuse, and disclosure of AscellaHealth's trade secrets and confidential information and the impairment of and interference with AscellaHealth's relations with its customers.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS
### Pennsylvania Uniform Trade Secrets Act

41. AscellaHealth incorporates by reference the preceding paragraphs of its Verified Complaint.

42. Mr. Baldzicki took AscellaHealth's trade secret and confidential and proprietary information over the course of his employment and currently retains – and has refused to return such information.

43. Such information derives independent economic value by not being generally known, and not being readily ascertainable by proper means by, others who can obtain economic value from its disclosure or use.

44. By the conduct described above, Mr. Baldzicki is engaging in the actual or threatened misappropriation violation of the Pennsylvania's Uniform Trade Secrets Act, 12 Pa. C.S. § 5301, *et seq*.

45. AscellaHealth has no adequate remedy at law and would suffer substantial and immediate irreparable harm unless Mr. Baldzicki is enjoined as requested below.

46. Greater injury will be inflicted on AscellaHealth by the denial of this relief than will be inflicted on Mr. Baldzicki by the granting of this relief.

47. Mr. Baldzicki's actions were intentional, willful, outrageous, and malicious, and justify the imposition of exemplary damages.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS
### Defend Trade Secrets Act

48. AscellaHealth incorporates by reference the preceding paragraphs of its Verified Complaint.

49. Mr. Baldzicki took AscellaHealth's trade secret and confidential and proprietary information over the course of his employment and currently retains – and has refused to return such information.

50. Such information derives independent economic value by not being generally known, and not being readily ascertainable by proper means by, others who can obtain economic value from its disclosure or use.

51. By the conduct described above, Mr. Baldzicki is engaging in the actual or threatened misappropriation violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*.

9

52. AscellaHealth has no adequate remedy at law and would suffer substantial and immediate irreparable harm unless Mr. Baldzicki is enjoined as requested below.

53. Greater injury will be inflicted on AscellaHealth by the denial of this relief than will be inflicted on Mr. Baldzicki by the granting of this relief.

54. Mr. Baldzicki's actions were intentional, willful, outrageous, and malicious, and justify the imposition of exemplary damages.

## COUNT III
## BREACH OF CONTRACT

55. AscellaHealth incorporates by reference the preceding paragraphs of its Verified Complaint.

56. Mr. Baldzicki continues to be bound by the Employment Agreement not to disclose or make use of AscellaHealth's trade secrets and confidential and proprietary information.

57. Mr. Baldzicki's taking, retention, and failure to return this information is a breach of his Employment Agreement.

58. By virtue of Mr. Baldzicki's breach of the Employment Agreement, AscellaHealth will suffer immediate and irreparable harm.

59. AscellaHealth has no adequate remedy at law and would suffer substantial and immediate irreparable harm unless Mr. Baldzicki is enjoined as requested below.

60. Greater injury will be inflicted on AscellaHealth by the denial of this relief than will be inflicted on Mr. Baldzicki by the granting of this relief.

## COUNT IV
## BREACH OF THE DUTY OF LOYALTY

61. AscellaHealth incorporates by reference the preceding paragraphs of its Verified

Complaint.

62. As an employee of AscellaHealth, Mr. Baldzicki owed contractual and common law duties to act in AscellaHealth's interests.

63. Mr. Baldzicki's actions in taking and retaining AscellaHealth's trade secrets and confidential and proprietary information were in violation of his duty of loyalty to AscellaHealth.

64. Mr. Baldzicki's actions were intentional, willful, outrageous, and malicious and justify the imposition of punitive damages.

**WHEREFORE**, AscellaHealth demands judgment against Mr. Baldzicki and requests the following relief:

a. Mr. Baldzicki, and all other persons or entities acting in concert with him or on his behalf, be temporarily, preliminarily, and permanently enjoined from using, retaining, or otherwise interfering with AscellaHealth's possession and control of its property, including any trade secrets, confidential information, or other intellectual property;

b. Mr. Baldzicki, and all other persons or entities acting in concert with him or on his behalf, be temporarily, preliminarily, and permanently enjoined from directly or indirectly using, disclosing, or retaining any trade secrets or confidential and proprietary information of AscellaHealth;

c. Mr. Baldzicki be ordered to produce for examination and remediation all computers, electronic data storage devices, and cloud accounts and to cooperate in the return of AscellaHealth's information and remediation of his misappropriation;

c. A judgment in AscellaHealth's favor and against Mr. Baldzicki for monetary damages in an amount in excess of $150,000, including, but not limited to, all amounts necessary to compensate AscellaHealth for Mr. Baldzicki's wrongful activities including reasonable

attorneys' fees and costs for his willful misconduct;

   d.  A judgment in AscellaHealth's favor and against Mr. Baldzicki for punitive or exemplary damages for his willful and malicious conduct;

   e.  In the alternative, following the entry of injunctive relief, a stay of this matter pending final resolution of claims appropriately heard in arbitration; and

   f.  Such other and further relief as this Court deems appropriate.

Dated: August 31, 2023       Respectfully submitted,

              */s/ William J. Leahy*
              William J. Leahy
              Alexa J. Laborda Nelson
              LITTLER MENDELSON, P.C.
              Three Parkway
              1601 Cherry Street, Suite 1400
              Philadelphia, PA 19102.1321
              Telephone: 267.402.3012
                    267.402.3051
              Facsimile: 267.402.3131
              wleahy@littler.com
              alabordanelson@littler.com

              Attorneys for Plaintiff AscellaHealth, LLC

## VERIFICATION

I, John Campolongo, hereby certify as follows:

1. I am the Chief Operating Officer for AscellaHealth, LLC. As such, I am authorized to make this Verification on behalf of AscellaHealth.

2. I have read the attached Verified Complaint and based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues, the factual allegations contained in the Verified Complaint are true.

3. I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

*John Campolongo*
John Campolongo

Executed on: August 31, 2023