# EXHIBIT A

## EMPLOYMENT AGREEMENT

This Employment Agreement (this "Agreement") is entered into by and between AscellaHealth, LLC, a limited liability company organized under the laws of the Commonwealth of Pennsylvania (the "Company") and Michael J. Baldzicki, an individual residing at ___7317 Marist Lane, Dublin Ohio 43017___ (the "Employee") as of the _22 day of April, 2019.

### WITNESSETH

WHEREAS, the Company desires to employ the Employee upon the terms and conditions set forth below; and

WHEREAS, the Employee desires to be employed by the Company upon the terms and conditions set forth below;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Employment. The Company hereby employs the Employee as Executive Vice President of Growth & Strategy, and the Employee hereby accepts such employment in accordance with the terms and conditions set forth herein.

2.    Term; Renewal. The term of this Agreement shall commence on the 22nd day of April, 2019 (the "Commencement Date") and shall terminate on the one-year anniversary thereof, unless earlier terminated in accordance with the provisions of Section 13. This Agreement shall automatically renew for one-year periods unless either party provides written notice of termination at least sixty (60) days prior to expiration.

3.    Duties of Employee. The Employee shall devote his or her full-time attention and best efforts to the performance of employment hereunder. Employee shall report to Dea Belazi, President and CEO of the Company, or his designee or successor, as applicable. Employee shall, in the performance of services hereunder, at all times maintain a standard of professional conduct which shall in all respects conform with the standards of the Company. The duties of the Employee shall be as set forth on Exhibit A hereto; provided, however, that such duties may be amended or supplemented in the discretion of the Company with additional duties of a character keeping with such duties and the Employee's position within the Company.

4.    Compensation.

a.    Annual Salary. The Company shall pay the Employee and the Employee agrees to accept from Employer, in full consideration of Employee's duties hereunder, an annual salary of Two Hundred Fifty Thousand Dollars ($250,000.00) per year (the "Salary"). The Salary shall be payable in twenty-four equal installments, in arrears, less applicable statutory deductions, on the 1st and 15th of each month.

b.    Sign-On Bonus.  The Company shall pay Employee a sign-on bonus of Fifty Thousand Dollars ($50,000.00) (the "Sign-On Bonus") on a date which is at least thirty (30) days after the Commencement Date. In the event Employee's employment with the Company is terminated for any reason within one (1) year of the Commencement Date, Employee shall be required to return the Sign-On Bonus within thirty (30) days of the date of termination.

c.    Commission.  The Company shall pay Employee a commission of 7.5% of net margin of revenue generated by the Employee (the "Commission"), to be paid quarterly. The Commission shall be determined in the sole reasonable discretion of the Company.

d.    Synthetic Equity.  The Employee shall be eligible to participate in the Company's synthetic equity program, at a rate of 1% for every $5 million of EBIDTA contributed by Employee's efforts, over the Company's current valuation of $50 million. Participation and valuation shall be determined in the sole reasonable discretion of the Company as per the synthetic equity plan policies.

5.    Evaluations. The President and CEO will conduct a formal evaluation of the Employee at least once during the initial ninety (90) day period of employment. Thereafter, the Employee will be evaluated on a regular basis, at least annually, as determined in the sole reasonable discretion of the Company.

6.    Office Location. The Employee shall be primarily centered at the Company's principal office location: 1055 Westlakes Drive, Suite 175, Berwyn, PA 19312. The duties may be performed at Employee's remote home office and in the field as determined in the reasonable discretion of Employee in consultation with the President and CEO.

7.    Benefits.

a.    Time Off.

i.    Paid Holidays.  The Employee will be entitled to paid holidays each year in accordance with the Company's holiday schedule.  The Company will notify the Employee as much in advance as practical with respect to the holiday schedule. The holiday schedule of the Company includes New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas.

ii.    Paid Time Off.  The Employee will be entitled to twenty (20) paid personal days per year, which shall accrue per the policies of the Company. Such days may be used for sick leave, emergency leave, vacation or other reasons as deemed appropriate by the Employee. The Employee shall provide advance notice to the Company prior to taking paid time off. All paid time off used for vacation must be pre-approved by the President and CEO.

b.    Medical Benefits.  Employee shall be eligible to participate in the Company's medical and dental benefit plans with no waiting period.

2

c.    401(k) Plan. The Employee shall be eligible to participate in the Company's 401(k) plan without any waiting period.

8.    Company's Rules and Regulations. The Employee shall strictly adhere to all of the rules and regulations of the Company that are presently in force or which may be established hereafter with respect to the conduct of employees contained in an Employee Handbook, Code of Conduct, Confidential Information Policy or otherwise. The Company shall have the right to amend, revise or discontinue the policies, procedures or benefits of the Company as it deems necessary from time to time in its sole discretion. Any such change in such policies, procedures or benefits will be effective upon issuance or notification of same by the Company, unless the Company declares otherwise.

9.    No Power to Bind Corporation. The Employee shall have no authority to obligate the Company on any contract or agreement of any kind, character or nature, and the Employee shall have no authority to borrow funds for the Company or to pledge any of its assets for any purpose whatsoever.

10.    Non-Competition and Non-Solicitation.

a.    Non-Competition. Employee hereby covenants and agrees that, during the term of his employment with the Company and for two (2) years after the termination thereof, regardless of the reason for the employment termination, he will not, directly or indirectly, engage in the pharmacy benefit management business in any capacity, whether full-time or part-time, as an employee, proprietor, partner, shareholder, member, owner, agent, director or officer, or have any economic interest in or lend any funds to such business entity or to any person having an interest in such entity. Notwithstanding anything to the contrary herein, this restrictive covenant shall not prohibit the Employee from providing services in the specialty pharmacy industry.

b.    Non-Solicitation of Clients, Client Prospects, and Vendors. Employee hereby covenants and agrees that during the term of his employment with the Company and for two (2) years after the termination thereof, regardless of the reason for the employment termination, he will not, directly or indirectly, solicit or attempt to solicit any business from, or enter into any business relationship with, any of the Company's clients, client prospects, or vendors.

c.    Non-Solicitation of Employees. Employee hereby covenants and agrees that during the term of his employment with the Company and for two (2) years after the termination thereof, regardless of the reason for the employment termination, he will not, directly or indirectly, on his own behalf or on behalf of or in conjunction with any person or legal entity, recruit, solicit or induce any employee of the Company to terminate their employment relationship with the Company.

d.    Liquidated Damages. In the event of any breach of this Section 10 by the Employee, the parties acknowledge that the Company would suffer irreparable injury, for which actual damages would be difficult or impossible to ascertain. Therefore, the parties agree that in the event of a breach of this Section 10, the Employee shall pay to the Company an amount equivalent to one years' salary, which amount bears a reasonable relationship to the probable loss

3

likely to be suffered by the Company. The parties acknowledge that the sums payable under this Section 10(d) shall constitute liquidated damages and not a penalty, and are in addition to all other rights of the Company, including, without limitation, injunctive relief, as set forth in Section 10(e) herein.

e.    Injunctive Relief. The Employee acknowledges that the Company's remedy in the form of monetary damages for any breach by the Employee of any of the provisions of this Section 10 may be inadequate and that, in addition to any remedy for such breach, the Company shall be entitled to institute and maintain any appropriate proceeding or proceedings including an action for specific performance and/or injunction.

11.    Confidentiality.

a.    The Employee agrees that the information relating to the Company's practices, customers, vendors, competitors, marketing, finances, trade secrets, know-how, inventions, discoveries, techniques, processes, computer programs, and any and all other information relevant to the operation of the Company's business are and shall remain the exclusive property of the Company at all times, are confidential and are of great value to the Company, and that any such information developed by the Employee during the course of such employment is and shall remain the property of the Company. The Employee agrees not to disclose any such information except as required for the performance of employment, and must not use such information for any other purpose at any time during or after termination of employment.

b.    Further, the Employee recognizes and acknowledges that the business matters and affairs of the Company shall be kept confidential, and the methods of business operations of the Company are valuable and confidential and that unauthorized disclosure of the same would irreparably damage the Company.

c.    The Employee therefore acknowledges that the Company's remedy in the form of monetary damages for any breach by the Employee of any of the provisions of this Section 11 may be inadequate and that, in addition to any remedy for such breach, the Company shall be entitled to institute and maintain any appropriate proceeding or proceedings including an action for specific performance and/or injunction.

12.    Inventions.

a.    Employee agrees that all processes, technologies and inventions (collectively, "Inventions"), including new contributions, improvements, ideas and discoveries, whether patentable or not, conceived, developed, invented or made by him during his employment with the Company shall belong to the Company provided that such Inventions grew out of Employee's work with the Company and are related in any manner to the services provided by the Company or are conceived or made on the Company's time or with the use of the Company's facilities, equipment or materials.

b.    Employee shall further: (i) promptly disclose such Inventions to the Company; (ii) assign to the Company, without additional compensation, all patent and other rights to such

4

Inventions for the United States and foreign countries; (iii) sign all papers necessary to carry out the foregoing; and (iv) give testimony in support of his inventorship.

c.    If any Invention is described in a patent application or is disclosed to third parties, directly or indirectly, by Employee within two years after the termination (or other cessation) of his employment hereunder, it is to be presumed that the Invention was conceived or made during the period of Employee's employment by the Company.

d.    Employee agrees that he will not assert any rights to any Invention as having been made or acquired by him prior to the date of this Agreement, except for Inventions, if any disclosed to the Company in writing prior to the date hereof.

e.    The Company shall be the sole owner of all products and proceeds of Employee's services hereunder, including, but not limited to, all materials, ideas, concepts, formats, suggestions, developments, arrangements, packages, programs, and other intellectual properties that Employee may acquire, obtain, develop or create in connection with and during the term of Employee's employment hereunder, free and clear of any claims by Employee (or anyone claiming under Employee) of any kind or character whatsoever (other than Employee's right to receive payments hereunder). Employee shall, at the request of the Company, execute such assignments, certificates or other instruments as the Company may from time to time deem necessary or desirable to evidence, establish, maintain, perfect, protect, enforce or defend its right, or title and interest in or to any such properties.

13.    Termination.

a.    Not for Cause Termination. The Company may terminate this Agreement for any reason with thirty (30) days' written notice.

b.    For Cause Termination. The Company may terminate this Agreement "for cause" at any time. For the purposes of this Section 13(b), "for cause" shall mean:

i.    a material breach of this Agreement by the Employee which is not cured within ten days written notice thereof if the breach is susceptible to cure within said ten-day period, or within thirty days if it is not susceptible to cure within said ten-day period but may be reasonably cured within the thirty day period; provided that, the Employee actively continues to seek to cure the breach and does not extend the period more than is minimally necessary to effect a cure. It shall be assumed that any breach of Section 10 or 11 herein is not susceptible to cure within any time period;

ii.    Employee having committed an act of embezzlement, fraud or misappropriation with respect to the Company or any of its property;

iii.    Employee's material violation of law; or

iv.    Willful conduct that is demonstrably and materially injurious to the Company.

5

In the event of any termination of the Employee which is not "for cause" at least one year after the Commencement Date, Company hereby agrees to pay Employee the Salary and health benefits for a three (3) month period following termination.

14.    Governing Law and Remedies. In addition to any other remedies at law or in equity it may have, each party shall be entitled to seek equitable relief, including injunctive relief and specific performance, in connection with a breach of the provisions of this Agreement. The parties agree and acknowledge that all provisions of this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania exclusively and without reference to principles of conflict of laws.

15.    Severability. Any term or provision of this Agreement which is deemed invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement in that or any other jurisdiction. If any of the restrictions contained in Section 10 hereof shall be deemed to be unenforceable by reason of the extent, duration or geographical scope thereof, or otherwise, then such restriction shall be deemed reduced to such extent, duration, geographical scope or in such other manner as otherwise required to make it enforceable, and in such reduced form, Section 10 hereof shall then be enforceable in the manner contemplated herein.

16.    Headings; Entire Agreement. The headings and captions of the sections herein are for convenience of reference only and do not form a part thereof, and do not in any way modify, interpret or construe the intent of the parties or affect any of the provisions of this Agreement. This Agreement represents the entire understanding between the parties on the matters addressed herein and may not be modified, changed or altered by any promise or statement by the Company other than in writing signed by the parties hereto.

17.    Personal Jurisdiction. Each party agrees to personal jurisdiction in any action brought in any court, Federal or State, within the County of Chester, Commonwealth of Pennsylvania, having subject matter jurisdiction over the matters arising under this Agreement. Any suit, action or proceeding arising out of or relating to this Agreement shall be subject to the exclusive jurisdiction of the state and/or federal courts located in the County of Chester, Commonwealth of Pennsylvania. Each party waives any objection which it may have now or hereafter to the laying of the venue of such action or proceeding and irrevocably submits to the jurisdiction of any such court in any such suit, action or proceeding.

18.    Counterparts; Signatures; Gender. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original. Faxed or scanned signatures shall have the same effect as original signatures. The use of the term "his", or similar terms denoting gender shall mean "his", "her," or "its", as the context requires.

19.    Non-Waiver. The failure by any party to insist upon strict compliance with any terms, covenants or conditions hereof shall not be deemed a waiver of such terms, covenants or conditions, nor shall any waiver or relinquishment of any right or power hereunder at any one time be deemed a waiver or relinquishment of such right or power at any other time or times.

6

20.    Acknowledgment of Rights. Employee acknowledges that he has carefully read and understands the provisions of this Agreement, and understands that he has the right to seek independent advice and attorney review at his expense. Nothing in this Agreement creates a contractual right to continued employment for a definite term. Employee represents and warrants that he has entered into this Agreement voluntarily.

21.    Arbitration. Notwithstanding anything to the contrary herein, the parties hereby agree that any and all disputes arising out of this Agreement or relating to the employment relationship created under this Agreement shall be settled by arbitration administered by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any such arbitration shall be conducted in Chester County, Pennsylvania, or at the AAA office located closest to the principal office of the Company. All costs related to arbitration shall be borne by each party equally unless otherwise determined by the arbitrator. **THE PARTIES UNDERSTAND THAT THEY ARE WAIVING THEIR RIGHT TO A JURY TRIAL FOR ANY AND ALL CLAIMS.**

**[Remainder of page intentionally left blank; signature page follows]**

7

IN WITNESS WHEREOF, the undersigned have executed this Employment Agreement as of the date set forth above.

EMPLOYEE


Michael J. Baldzicki


ASCELLA HEALTH, LLC

By: _____
Name: Dea Belazi
Title: President and CEO

8

## EXHIBIT A

### DUTIES

- Assist and support new business attainment
- Market the services of the Company
- Manage existing clients
- Manage a team to support the above duties
- All other duties in line with the position of Executive Vice President of Growth and Strategy as assigned by the President and CEO

9